IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | **CR 12-52 Erie** |
| JAMES LAMONT JOHNSON, | ) | |
| | ) | |

**OPINION and ORDER**

Defendant James Lamont Johnson is charged in a one-count indictment with Possession of an Unregistered Firearm, specifically, a firearm silencer, in violation of 26 U.S.C. § 5861(d). Presently before the Court is Defendant's Motion to Suppress with Citation to Authorities. ECF No. 33. A hearing on the motion was held on March 11, 2013. At the hearing testimony was presented from Detective Sergeant Craig Gump of the Meadville Police, Chief Randolph Detzel of the Vernon Township Police, and the informant on the case, Thomas Williams. For the reasons that follow we will deny Defendant's motion.

**I. Background**

On August 14, 2012, Thomas Williams (who at the time was considered a confidential informant) informed a Meadville Police officer that he had manufactured a firearm silencer at the request of Mr. Johnson. He further stated that Mr. Johnson was to pay him $150 in exchange for the silencer.[1] The officer who first received the information from Mr. Williams relayed the information to Detective Sergeant Craig Gump of the Meadville Police. Mr. Williams reported to Detective Gump that he did not want to sell the silencer because he feared Mr. Johnson.

---

[1] In the Affidavit of Probable Cause competed by Chief Detzel he stated that the price was $250. During testimony Chief Detzel explained that it was likely a mistake in the Affidavit and that the correct amount was $150. Tr. of Suppression Hearing, March 11, 2013, at 95, *see also* 41, 67 & 80.

Detective Gump eventually learned that Mr. Williams lived in Vernon Township, not Meadville, and thus the investigation fell within the jurisdiction of the Vernon Township Police. Accordingly, Detective Gump notified Chief Detzel of the Vernon Township Police of the investigation.

During the course of the investigation Mr. Williams reported that Mr. Johnson (who Mr. Williams referred to as "Lamont") was a black male who drove a red Lexus. Mr. Williams also showed the silencer to both Detective Gump and Chief Detzel. The silencer was inside a common brown paper bag. Mr. Williams further reported that Mr. Johnson was supposed to come to Mr. Williams's house that day and retrieve the silencer. Because Vernon Township has a relatively small police force, Chief Detzel requested assistance from Detective Gump and the Meadville Township Police Department to conduct surveillance that afternoon at Mr. Williams's residence.

Surveillance was established at the residence in the late afternoon of August 14, 2012, but Mr. Johnson did not show up as expected. Eventually it was learned that he and Mr. Williams rescheduled the meeting for the next morning. Accordingly, Detective Gump retrieved the silencer, still in its brown paper bag, from Mr. Williams and turned it over to Chief Detzel to keep until the next morning. Chief Detzel retained the silencer until August 15, 2012, when another controlled delivery of the silencer was planned.

Surveillance was again set up the morning of August 15, 2012 in the area around Mr. Williams's residence. This time officers of the Pennsylvania State Police assisted the Vernon Township Police Department and the Meadville Police department in the operation.

Shortly after surveillance was established a black male, later identified as Mr. Johnson, arrived at the residence in a red Lexus. Mr. Johnson entered Mr. Williams's house where he

remained for approximately 21 minutes.  He then exited and returned to his vehicle.  Once he entered his vehicle Mr. Johnson started the engine but remained in his vehicle for a brief period of time.  When he put his vehicle in reverse the officers converged on the location and arrested Mr. Johnson.

Mr. Johnson complied with police directions to exit the vehicle and get down on the ground.  He was then handcuffed and patted down.  Detective Gump was informed by Mr. Williams that he had handed the silencer over to Mr. Johnson, but no silencer was discovered on Mr. Johnson.  Mr. Johnson was placed under arrest and escorted to one of the police vehicles.  A full-scale search of the Lexus was not conducted and eventually a tow truck arrived to remove the vehicle.

*Dashboard Videotape Recording*

After Mr. Johnson had entered his vehicle but before he was arrested, a Pennsylvania State Police vehicle arrived on the scene equipped with a dashboard video recording device that recorded the ensuing events.  The videotape recording was entered into evidence as Government Exhibit 2.  The video, which the Court viewed, shows Mr. Johnson exit his vehicle and then lie face down on the ground.  There is no sound accompanying the video.  Mr. Johnson is patted down, handcuffed, and brought to a standing position.

The driver side door of the red Lexus remained open after Mr. Johnson exited.  The video shows one of the officers briefly look inside the vehicle and then close the driver side door.  Mr. Johnson is then moved to a position near the rear of the vehicle where he is searched by one of the officer's while another officer stands behind the searching officer receiving items taken from Mr. Johnson's person. The officer receiving the items then steps forward and conducts a brief search of Mr. Johnson's pant legs.   While this is occurring a third officer walks over to the passenger side of the vehicle and appears to look inside and around the vehicle.

Mr. Johnson is then led away to a police vehicle and the officer who briefly searched his pant leg, as well as the officer who approached the passenger side of the vehicle, remained in the area appearing to look inside the vehicle windows. One of the officers opens the passenger door and conducts a visual search of the interior of the vehicle, after which the passenger door is closed.

Next, an officer is seen walking around the yard looking down at the ground. This same officer arrives back at the vehicle and opens the driver side door. He then leans into the interior of the vehicle and bends down to inspect the driver's area. He places his body into the interior of the vehicle near the operating pedals. He then stands up and looks into the back seat of the vehicle through the closed back seat window on the driver's side. After briefly appearing to view the area around the vehicle and looking in the vehicle again the officer closes the door. Just before he closes the door, another officer walks up to the passenger side and conducts a cursory visual search from outside the vehicle into the interior of the back seat and front seat of the passenger side of the vehicle

Next, an officer is seen leading Mr. Williams out of the house in handcuffs. Several officers then appear to be looking at the rear exterior of the vehicle and the surrounding area. One of these officers continues around the vehicle and again conducts a visual inspection through the windows on the passenger side of the vehicle. Then Mr. Johnson is led out of the police vehicle he was seated in and searched again by two officers. He is then placed into a different police vehicle. After a short period of time a flatbed tow truck arrives in order to remove the Lexus.

*Affidavit of Probable Cause*

After Mr. Johnson's vehicle was towed to the Vernon Township Police Station and secured, Chief Detzel applied for, and obtained, a search warrant for the vehicle. Gov. Ex. 1.

4

The face of the Search Warrant describes the premises to be searched as a "Lexus, ES350, four door sedan, red in color, bearing Pennsylvania registration HZD4914." Gov. Ex. 1, at 1.

In the Affidavit of Probable Cause attached to the Application for Search Warrant, Chief Detzel states that he met with Detective Gump and another Meadville Police Officer on August 14, 2012 at 2:35 p.m., and was introduced to Thomas Williams of 18270 Turner Road in Vernon Township. Aff. ¶ 3. Chief Detzel stated that Williams informed him that he had made a silencer for a person known as Lamont; that Lamont was to pay Williams $250 for the silencer; that the exchange was to take place that afternoon; and that Williams had a change of heart and did not want to give the silencer to Lamont. Aff. ¶¶ 3, 5.

The Affidavit further states that Williams described Lamont as "a black male with a thin mustache approximately 5'10: in height and 180 to 200 pounds in weight with a stocky build. Williams stated that Lamont always drove a burgundy late model Lexus sedan." Aff. ¶4.

Chief Detzel then explained that he and Meadville City Police Officers set up surveillance to monitor the exchange on August 14, 2012, that the exchange did not take place, but that Williams and Lamont arranged to make the exchange the next morning between 10:00 and 10:30 a.m. Aff. ¶¶ 6-7. The Affidavit further explains that surveillance was established on the morning of August 15, 2012 at Williams's residence by Vernon Township Police, Meadville Police, and the Pennsylvania State Police, that a red Lexus arrived at Williams's residence, and a black male exited the vehicle and entered the residence. Aff. ¶¶8-10.

Chief Detzel further explained that the black male exited the residence and re-entered the red Lexus, and that the officers then moved in and arrested the male who was later identified as James Lamont Johnson. Aff. ¶ 12. Chief Detzel also stated that "Williams stated that Lamont had taken possession of the silencer from Williams and put it in his pants pocket." Aff. ¶ 11.

Finally, Chief Detzel explained that the red Lexus was secured and towed to the Vernon Township Police Department. Aff. ¶ 13.

After the Search Warrant was obtained, Vernon Township Police Officers searched the vehicle for about 45 minutes to an hour but did not find the silencer. Tr. 106. One of the officers then researched on the Internet for information showing the location of hidden compartments in a Lexus of the type Mr. Johnson was driving. Tr. 107. The research was successful and armed with the knowledge of hidden compartments in a Lexus, the officers again searched the vehicle and found the silencer in the paper bag in a space in the dashboard.

Mr. Johnson argues that the search warrant in this case contains materially false statements or reckless omissions of fact rendering the warrant invalid under Franks v. Delaware, 438 U.S. 154, 155-56 (1978). Specifically, Mr. Johnson alleges that Chief Detzel deliberately or recklessly omitted from his affidavit that Mr. Johnson's vehicle had already been searched and no silencer had been found, and that he failed to include in his affidavit that no money was recovered, despite the fact that Mr. Johnson was supposed to have paid $150 for the silencer.

**II. Applicable Law**

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

Mr. Johnson argues that the search warrant in this case contains materially false statements or reckless omissions of fact rendering the warrant invalid under Franks v. Delaware, 438 U.S. 154, 155-56 (1978). "The Fourth Amendment prohibits the intentional or reckless inclusion of a material false statement (or omission of material information) in a search-warrant

affidavit." United States v. Pavulak, 700 F.3d 651, 665 (3d Cir. 2012), citing United States v. Yusuf, 461 F.3d 374, 383–84 (3d Cir. 2006).

A defendant may be entitled to a Franks hearing if he is able to make a "substantial preliminary showing" that the affiant knowingly or recklessly omitted facts from the affidavit (or included a false statement in the affidavit) and is able to demonstrate that the omitted facts (or false statements) are "necessary to the finding of probable cause." Pavulak, 700 F.3d at 665, quoting Yusuf, 461 F.3d at 383–84.

The United States Court of Appeals for the Third Circuit has applied Franks to cases where the Defendant alleges that facts have been deliberately or recklessly omitted from a supporting affidavit. United States v. Frost, F.2d 737, 742-43 & n.2 (3rd Cir. 1993). More specifically, the Third Circuit Court has explained that "(1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know: and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting." Wilson v. Russo, 212 F.3d 781, 783 (3rd Cir. 2000).

In addition to finding that the statements were recklessly or knowingly omitted from the affidavit, the court must also determine whether the missing statements were "material, or necessary, to the finding of probable cause." Sherwood v. Mulvihill, 113 F.3d 396, 399 (3rd Cir. 1997). The materiality of the omissions is determined by "excis[ing] the offending inaccuracies and insert[ing] the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." Wilson, 212 F.3d at 789, citing Sherwood, 113 F.3d at 399.

### III. Discussion

Mr. Johnson asserts that any reasonable person trying to establish probable cause to search a vehicle for a silencer would know that a judge would want to know that the vehicle had already been searched and no silencer was found.  D. Motion at 5 & D. Reply at 2, both citing United States v. Bowling, 900 F.2d 926, 932 (6th Cir. 1990) (previous fruitless search dissipates probable cause to believe that contraband would be found in the same area) and Filippelli v. United States, 6 F.2d 121, 125 (9th Cir. 1925) (same).  Mr. Johnson also asserts that any reasonable person would know that a judge would want to know that no money changed hands where the informant had originally said that money was to be exchanged.

Mr. Johnson argues that the initial search of the vehicle was not cursory, but was instead as thorough as the officers felt necessary to determine if the silencer was in the vehicle.  In support of this assertion, he relies on the fact that after the initial search of the vehicle the officers again searched Mr. Johnson. He reasons that the officers would not have searched Mr. Johnson a second time if they believed that the silencer really was in the vehicle despite the initial search.  Thus, he concludes that the fact of the previous search is an omission that "'[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'"  Wilson, 212 F.3d at 788, quoting United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993).

Mr. Johnson alleges that the omissions are material because had Chief Detzel added the information to his affidavit that there was already a previous fruitless search and that no buy money had been exchanged, it would have resulted in the Affidavit failing to establish probable cause to search the vehicle. Thus, he concludes that the silencer should be suppressed.

We first determine whether the omissions were reckless or intentional omissions on the part of Chief Detzel. If so, we then consider whether the omissions were material.

### A. Reckless or Intentional Omissions

#### 1. Lack of Buy Money

Detective Gump testified that after Mr. Johnson was arrested Mr. Williams told him that the transaction had taken place. Tr. 23. Detective Gump also testified that Mr. Williams told him that no money had exchanged hands, but that Mr. Johnson would come back later to pay him. Tr. 32-33, 34, 65. Chief Detzel did not directly talk to Mr. Williams about the lack of buy money but he did learn that no money had been exchanged, either from one of his officers or from Detective Gump. Tr at 65.

Both Chief Detzel and Detective Gump testified that the fact that no money had been exchanged was not that important to them because the salient information was whether the silencer had been exchanged. We find that any reasonable person would know that in a deal that was to involve exchanging a silencer for money that the money was actually not delivered is "the kind of thing the judge would wish to know." United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993). Thus we will consider whether this omission was material.

#### 2. Prior Search of the Vehicle

The evidence at the hearing established that the decision to obtain a search warrant for the vehicle was made by Chief Detzel before the arrest of Mr. Johnson. Tr. 25. Detective Gump testified that after Mr. Johnson was searched he searched the ground area around the vehicle and the yard to see if Mr. Johnson had tossed the silencer outside of the vehicle. Tr. 27, 68. Detective Gump also testified that he opened the driver's side door "to do a visual scan of the floorboards and the seat area to make sure that there was no weapons, no contraband, and

also looking for the silencer, to see if it was in a plain view area." Tr. 29. He put the top of his body into the vehicle but he did not reach into the vehicle, into the consoles or the glove box, and he did not physically sit in the vehicle. Tr. 29-30, 67. He testified that a visual check of the rear seat area was performed through the windows. Tr. 30. He also testified that the rear doors were not opened, the trunk was not opened, no compartments or containers were opened, and no officer entered the back seat. Tr. 30. The dashboard videotape is consistent with Detective Gump's testimony.

Detective Gump also explained that the fact that a tow truck operator was expected and would likely enter the vehicle in order to tow it also necessitated that a cursory search for contraband be performed. Tr. 30-31. Detective Gump testified that this was for the operator's safety as well as to eliminate any question that any contraband he might have found was not put there by the operator. Tr. 30-31.

In addition, the videotape of the event shows that another officer opened the passenger side door and did a visual check of that area, but he did not insert his body into the vehicle.

Chief Detzel testified that he knew that officers had looked inside the vehicle through the windows and that the area around the vehicle had been searched and that no silencer was found, but he did not know prior to completing his Affidavit that any of the vehicle doors had been opened. Tr. 76. Chief Detzel also testified that it was his belief that the vehicle had not been searched prior to applying for a search warrant. Tr. 78, 82.

The testimony also establishes that Mr. Johnson was removed from the police vehicle he was initially placed in and searched a second time. This is confirmed by the videotape. Chief Detzel testified that Mr. Johnson was searched the second time because he decided to transport Mr. Johnson to the Police Department in his vehicle in order to establish a rapport with him. Tr.

10

81. He further testified that it is department policy to always pat down a person before putting him in a police vehicle. Tr. 81-82.

We disagree with Mr. Johnson's contention that the initial search of the vehicle was not cursory. We also discount Mr. Johnson's argument that the initial search of the vehicle was as thorough as the officers felt necessary to determine if the silencer was in the vehicle. To support this assertion, Mr. Johnson relies on the fact that after the initial search of the vehicle the officers again searched Mr. Johnson. He reasons that the officers would not have searched Mr. Johnson a second time if they believed that the silencer really was in the vehicle despite the initial search.

The evidence here clearly demonstrates that the initial search of the vehicle was cursory. Significantly, no officer entered the vehicle and sat in the driver's seat or physically searched the interior of the vehicle or its compartments. Given the brief and cursory nature of the initial search, we find it unreasonable to believe that the officers in this case believed that they had conducted a thorough search of the vehicle. A thorough search of the vehicle would involve, at a minimum, an officer sitting in the driver's seat and using his hands to reach into and around the interior of the vehicle. In addition, an officer conducting a thorough search would open any compartments within reach of a person sitting in the driver's seat. In fact a thorough search of the vehicle would involve more than merely searching the driver's seat area.

While it is true that a reasonable person would know that a judge reviewing an application for a search warrant would want to know that the premises had already been searched and no contraband was found, we do not think that a reasonable person would know that a judge would want to know that a cursory visual search was performed of portions of a premises that were in plain view but that the interior of the premises was not entered or physically searched at all. Having reviewed the videotape of the event along with the testimony of Detective Gump and

Chief Detzel we find that the brief and cursory visual search of the vehicle while officers remained outside the vehicle was not the type of prior search that dissipates probable cause. The officers were simply looking to see if the silencer was in plain sight within the vehicle. We therefore also discount the suggestion that the second search of Mr. Johnson was performed because the officer's believed the silencer was not in the vehicle. Thus, we conclude Chief Detzel did not recklessly or intentionally omit this fact from the Affidavit.

### B. Materiality

We found that the fact that Mr. Johnson had not given Mr. Williams the promised money in exchange of the silencer was a reckless omission. Accordingly, we must assess whether the omission of this fact was material or necessary to the finding of probable cause. To determine materiality we insert the omitted facts into the affidavit and determine whether the affidavit would establish probable cause. Wilson, 212 F.3d at 789.

Chief Detzel stated in his Affidavit that Mr. Williams informed the officers that Mr. Johnson "had taken possession of the silencer from Williams and put it in his pants pocket." Aff. ¶ 11. Inserting into the Affidavit the fact that the promised buy money had not been exchanged might slightly undermine the informant's contention that a deal had been arranged to exchange the silencer for money, but it does not eliminate probable cause. We find that a neutral detached magistrate reviewing the affidavit in a common sense manner and considering all the circumstances would conclude that probable cause had been established because in fact the silencer had been exchanged, even though the recipient had not handed over any money.

Finally, we would reach the same conclusion taking into account all the omissions together. If the prior cursory search, the second search of Mr. Johnson, and that no buy money

had been exchanged were recklessly omitted from the Affidavit, we find that the omissions were not material or necessary to the finding of probable cause.

To the extent that these omissions dissipate probable cause, it would be minimal. As already stated, the omission of the lack of money being exchanged is not material on its own, and to include that fact along with the other omissions does not change our conclusion. The omission of the second search of Mr. Johnson, in context with the other omissions and factual averments in the Affidavit, does not change the probable cause determination. The second search of Mr. Johnson did not occur following a *thorough* fruitless search of the vehicle; it occurred after a *cursory visual* search of the vehicle. As explained, there is no basis to conclude that the second search of Mr. Johnson occurred because the officers believed that the silencer was not in the vehicle.

We conclude that the omitted material taken together in fact strengthens probable cause. The Affidavit states that Mr. Williams had given the silencer to Mr. Johnson. Including the omitted facts into the Affidavit supports a finding that the officers therefore had a reasonable basis to believe that after Mr. Johnson left the residence the silencer was on Mr. Johnson, hidden in the vehicle, or in the area around the vehicle. It was not found on Mr. Johnson or in the area around the vehicle. The officers conducted a brief and cursory visual search of the vehicle but did not see the silencer in plain view. By including into the Affidavit the fact that a cursory visual search did not reveal the silencer, coupled with the other factual assertions in the Affidavit, supports the common sense conclusion that the officers had a reasonable basis for believing that the silencer was in fact somewhere within the interior of the vehicle in a place they had not searched, namely, inside the body of the vehicle. Compare United States v. Keszthelyi, 308 F.3d 557, 572 (6th Cir. 2002)(government failed to show that for a second search of

defendant's home the "agents possessed a reasonable basis for believing that undiscovered evidence remained in the defendant's home.")

IV. Conclusion

We conclude that the affidavit in support of the application for a search warrant in this case does not contain material reckless or intentional omissions of fact rendering the warrant invalid under Franks v. Delaware, 438 U.S. 154 (1978). We find that only the fact that no buy money was exchanged was recklessly omitted, and that none of the omissions were material. Reviewing the totality of the Affidavit with the omissions included we find that probable cause is still established. Accordingly, Defendant's motion to suppress is denied.

## ORDER

AND NOW, this 15th day of April 2013, it is hereby ORDERED, ADJUDGED and DECREED that Defendant James Lamont Johnson's Motion to Suppress With Citation to Authorities (ECF No. 33) be and hereby is DENIED.

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior District Court Judge